Filed 6/30/25  P. v. Withers CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082423 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN301965) |
| DESTIN LEE WITHERS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, A. Natasha Cortina, Supervising Deputy Attorney General and Christine Levingston Bergman, Deputy Attorney General for Plaintiff and Respondent.

Defendant Destin Lee Withers appeals from an order denying his request for Penal Code section 1172.6[1] resentencing. After an evidentiary hearing, the trial court found Withers was not eligible for section 1172.6 relief because the evidence established beyond a reasonable doubt that he was a major participant who acted with reckless indifference to human life in the murder of Denise Rodriguez. Withers contends insufficient evidence supports the court's order. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted Withers and his codefendant, Jeffrey McCreary, of first degree murder. (§ 187, subd. (a).) It found true an allegation that McCreary alone was armed with a handgun (§ 12022, subd. (a)(1)) and personally discharged a handgun causing death. (§ 12022.53, subd. (d).) The court sentenced Withers to 25 years to life in prison plus a determinate term of three years for his prison priors. (§ 667.5, subd. (b).)

We set forth in full the facts of the underlying offenses in our prior opinion. On direct appeal, this court affirmed the judgment over Withers's challenges to the sufficiency of the evidence that, as a factual matter, he committed felony murder based on his role in Rodriguez's kidnapping or on the legal claim that he aided and abetted McCreary in committing the murder. (*People v. Withers, et al.* (Sept. 29, 2016, D067156) [nonpub. opn.], review den. Jan. 18, 2017, S238120 (*Withers*).) Here, we merely summarize the facts for context.

In January 2012, McCreary, who often carried a handgun and owned a bulletproof vest, acted as an "enforcer" for a drug dealer who lived in an apartment complex (the Del Dios apartment) where people regularly

---

[1] Undesignated statutory references are to the Penal Code. (§ 1172.6 added by renumbering former § 1170.95, Stats. 2022, ch. 58, § 10.)

2

consumed drugs. (*Withers, supra*, D067156.) That month, McCreary met Rodriguez at the Del Dios apartment. McCreary knew that Rodriguez and D.R., who was a Chula Vista gang member, used methamphetamine and had consensual sex.

Withers, who was a big, formidable, street fighter and mixed martial arts practitioner with a reputation for helping women in trouble, met Rodriguez the next day when he went to the Del Dios apartment to buy methamphetamine. Rodriguez tearfully told him she was raped. Withers took her and her baby to his house. She initially told him someone had given her bad drugs and some men had taken turns raping her, but later said only her boyfriend (D.R.) had raped her.

A day or two later, Withers took Rodriguez to the Del Dios apartment to conduct an "investigation" of the rape and drugs allegations. Withers questioned McCreary about who had raped Rodriguez. McCreary said that Rodriguez and D.R. had had consensual sex. Nevertheless, in retaliation for the alleged rape, Withers stole D.R.'s car and took Rodriguez to his house. When she saw McCreary there, she became hysterical and screamed at him, claiming she received bad drugs and was raped. Withers told somebody, "Get rid of this bitch. Get this bitch out of here." (*Withers, supra*, D067156.) Rodriguez told Withers he should not have stolen D.R.'s car. She continued to scream and yell, and then tried to leave, but Withers shoved her against a wall, and took her into a bathroom for about 20 minutes.

Later that same day, Withers arranged for McCreary to get a "throwaway" gun, which is an untraceable gun. McCreary texted Withers, "Im [*sic*] in negotiations on a throw away, too little time advanced notice for anything clean and my personal takes too long to clean and assemble which

3

is why I don't usually pack backups.  There will be rental, but I'll throw in $60 cash towards that."  (*Withers, supra*, D067156.)

That night, Withers drove McCreary and Rodriguez to a hotel.  They all smoked methamphetamine.  After midnight, Withers and McCreary left the hotel and went to the Del Dios apartment and confronted D.R., who convinced Withers the rape allegations were false.  Withers apologized to him and promised to return his car to him.  Withers thereafter called the hotel and, referring to Rodriguez, told one of his contacts there something like, "[p]ut that bitch in a corner" or "[p]ut her in check."  (*Withers, supra*, D067156.)  Withers was angry that Rodriguez had lied to him.  After Withers's phone call ended, McCreary nodded his head and told Withers, "I got it.  I'll take care of it."  (*Withers, supra*, D067156.)

Withers and McCreary returned to the hotel, and Withers grabbed Rodriguez, put her in the backseat of his vehicle, and drove away.  About five minutes into their drive, McCreary, sitting in the front passenger seat, turned around and fired four gunshots into her.  According to a forensic pathologist, she was shot possibly while she tried to open the car door.  The gunshots eventually caused her death.

Withers returned with McCreary and Rodriguez's body to his home.  He took a blanket from his house out to the car.  Withers and McCreary ate some food.  Withers told McCreary to take the car and "clean that mess."  (*Withers, supra*, D067156.)  McCreary then drove Withers's vehicle to an undeveloped cul-de-sac and left Rodriguez's body there.  McCreary texted Withers that he had found a perfect spot.  Withers later went to a friend's remote property and burned items that were in his car.

Withers was arrested while he was driving McCreary's vehicle.  Withers had in his pocket the same type of ammunition fired from the gun

4

that killed Rodriguez.  Withers told a homicide detective that when he pulled into his driveway, he thought she was still alive but "damn near gone."  A little later, she "was gone," meaning she was dead.  Withers and McCreary had something to eat and drink, and planned their next step.

The day after his arrest, Withers volunteered to provide police information regarding the homicide.  Withers placed a recorded telephone call to McCreary, who implicated himself as the shooter.  Withers told McCreary, "[Y]ou, didn't have to fuckin' shoot four fuckin' times, idiot.  That was crazy."  Withers added, "Yeah I [was] fucking . . . driving on the fuckin' side of the road and all of a sudden you fucking pop four rounds, I was like holy shit."  (*Withers, supra*, D067156.)  McCreary laughed, and they discussed dumping Rodriguez's body and getting rid of everything.

Two days later, when police arrested McCreary, he had the murder weapon in his possession.  After Withers's arraignment and as he was being led back to his holding cell, Withers yelled out several times, "It was only supposed to be a rape."

While in custody, Withers spoke extensively to a cellmate and said McCreary was not "supposed to shoot the bitch in my back seat."  (*Withers, supra*, D067156.)  Withers admitted he had grabbed Rodriguez by the arm and put her in the car, and that an argument occurred in the car just before Rodriguez was shot.  Withers said he handled the gun before putting Rodriguez in the car.  He described the controlled telephone call he made to McCreary.  The cellmate asked Withers why, during that call, he had not asked McCreary to state his reason for shooting Rodriguez.  Withers responded, "I couldn't Bro.  I couldn't."

During a recorded phone call between Withers and his wife, she asked him what they had planned to do to Rodriguez that night, and Withers said, "I was going to beat [her]."

Withers and McCreary both testified at trial, claimed there was no plan to kill Rodriguez, and each identified the other as the shooter. Each claimed he was surprised by the other's shooting Rodriguez, and that he feared the shooter.

*Resentencing Proceedings*

In November 2020, Withers filed a section 1172.6 petition for resentencing. The trial court conducted Withers's evidentiary hearing but did not receive new evidence. At the outset of the hearing, the court noted it had presided over the trial, and was therefore familiar with the case. It read all of the parties' moving and opposing papers, as well as the entire trial transcript.

The prosecutor argued, "[I]f the court recalls, there were earplugs found in [Withers's vehicle] that belonged to [ ] Withers, and there were two pairs of earplugs. I believe there was three found total. And . . . Withers didn't have a gun that we know of, that the gun was produced by [ ] McCreary which would suggest that they also procured the ear protection, the earplugs, because they were going to shoot the gun. [¶] Now, if you were shooting the gun someplace out like a field, you would not need earplugs. But if you were shooting on the inside of a car and you knew you were going to be shooting on the inside of car and you knew that guns were going to be extremely loud on the inside of a car, then you would procure earplugs. [¶] So I think that there is plenty of evidence to suggest and to prove that [ ] Withers was (1), an aider and abettor and falls out of the scope of [section 1172.6]. [¶] But (2), even if the jury found strictly on a theory of felony murder, . . . [Withers] was

6

indeed a major participant and, in fact, the person who orchestrated the entire events that night."

Defense counsel disagreed: "I'll just . . . talk about the earplugs the district attorney talked about in her oral argument, and just say, again, it shows that so there are earplugs in the car. I don't believe that there's any evidence that there's DNA or that they were used. I mean, there's lots of reasons somebody might have earplugs. You certainly—I mean, even when I fire weapons in open fields, I wear ear protection because it can get quite loud. [¶] But again, the fact that there are earplugs, could it be because they were planning on shooting [ ] Rodriguez? I guess. But there's nothing else to suggest that that's what happened, and so I think it's speculation. [¶] I know that—[a]gain, it could be that that was the case, but again, beyond a reasonable doubt isn't could or could have been."

Following arguments by counsel, the court denied the petition, finding beyond a reasonable doubt that Withers was a major participant, who set the "whole thing in motion," and he acted with reckless indifference to human life.

## DISCUSSION

Withers contends the trial court erroneously denied his resentencing petition, as insufficient evidence supported its finding that he was a major participant in the underlying felony who acted with reckless indifference to human life.

### I. *Legal Principles Concerning Section 1172.6*

Effective January 1, 2019, the Legislature amended the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major

7

participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill No. 1437; Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Curiel* (2023) 15 Cal.5th 433, 448; *People v. Lewis* (2021) 11 Cal.5th 952, 957.)[2] It redefined "malice" in section 188 to add a requirement that all principals to a murder "shall act with malice aforethought" and that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), as amended by Stats. 2018, ch. 1015, § 2; *Curiel,* at p. 449.)

The Legislature also narrowed the classes of persons liable for felony murder under section 189. Now, "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [including kidnapping] in which a death occurs is liable for murder only if one of the following is proven: (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); *People v. Curiel, supra,* 15 Cal.5th at p. 448.)

The Legislature put in place a procedural mechanism for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief where the two substantive changes described above affect a defendant's conviction. (*People v. Curiel, supra,* 15 Cal.5th at p. 449.) It includes a petition procedure in which the court decides

---

[2]    As of January 1, 2022, the Legislature amended the law to allow a defendant to seek resentencing under its provisions for attempted murder and manslaughter convictions, among other changes. (Sen. Bill No. 755; Stats. 2021, ch. 551, § 2.)

whether a defendant has made a prima facie showing of entitlement to relief under section 1172.6, subdivision (c). (*Curiel,* at p. 450.) Upon such a showing, the court is required to issue an order to show cause and conduct an evidentiary hearing. (§ 1172.6, subds. (c) & (d)(1); *Curiel,* at p. 450.)

At the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 effective January 1, 2019." (§ 1172.6, subd. (d)(3).) The petitioner and the prosecution may offer new or additional evidence to meet their respective burdens, and the "admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (*Ibid.*) The trial court acts as an independent factfinder in determining whether the People have met their burden. (*People v. Schell* (2022) 84 Cal.App.5th 437, 442.)

This court ordinarily reviews for substantial evidence the trial court's denial of a section 1172.6 petition at the evidentiary hearing stage. (See *People v. Reyes* (2023) 14 Cal.5th 981, 988.) Under this standard, our role differs from that of the trial court. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) "While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Ibid.*) In applying this standard, we "review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial

9

evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*Reyes*, at p. 988.) We will not reverse the order unless there is no hypothesis upon which sufficient substantial evidence exists to support the trial court's decision. (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125.) "We must 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] 'The same standard applies when the conviction rests primarily on circumstantial evidence.' [Citation.] 'An appellate court must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence.' " (*Ibid.*) Under settled appellate principles, we affirm if the trial court's order is correct on any legal theory, regardless of the reasoning in reaching its decision. (*People v. Zapien* (1993) 4 Cal.4th 929, 976.)

## II. *Law Regarding Felony Murder*

As Withers was not the actual killer, under section 189, subdivision (e)(3), we evaluate whether he was a major participant in the underlying felony and acted with reckless indifference to human life. The California Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788, 794 (*Banks*) and a follow-up decision, *People v. Clark* (2016) 63 Cal.4th 522, 618-622 (*Clark*), identified several factors courts should consider in determining whether, under the totality of the circumstances, a defendant was a major participant in an underlying felony who acted with reckless indifference to human life. (*In re Taylor* (2019) 34 Cal.App.5th 543, 551-553.) In *Banks,* the California Supreme Court explained that a defendant's knowing participation in a robbery with others who are armed is insufficient, without more, to prove the defendant acted with reckless indifference to human life. (*People v. Strong*

10

(2022) 13 Cal.5th 698, 706; *Banks,* at pp. 808-810.) *Banks* concluded that "[a]wareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient," because a defendant must "knowingly creat[e] a 'grave risk of death' " through the defendant's "own actions." (*Banks,* at pp. 808, 807.)

*Clark* expanded on the "reckless indifference to human life" element, stating that it "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of [the defendant's] actions." (*Clark, supra,* 63 Cal.4th at pp. 616, 617.) " 'These requirements significantly overlap . . . for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*Id.* at p. 615.)

In *In re Scoggins* (2020) 9 Cal.5th 667, the California Supreme Court explained "reckless indifference to human life" has a subjective and an objective element. (*Id.* at p. 677.) "As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and [the defendant] must consciously disregard 'the significant risk of death [the defendant's] actions create.' [Citations.] As to the objective element, ' "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the [defendant's] conduct and the circumstances known to [the defendant], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant's] situation." ' . . . Notably, 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life." (*Ibid.*)

11

Whether a defendant acted with reckless indifference to human life depends upon the totality of the circumstances. (*In re Scoggins, supra,* 9 Cal.5th at p. 677.) "Relevant factors include: Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony? [Citation.] ' "[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient." ' " (*Ibid.;* see also *People v. Strong, supra,* 13 Cal.5th at p. 706.)

### III. *Analysis*

The first factor in determining if Withers was a major participant in the kidnapping and murder is, "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?" (*Banks, supra,* 61 Cal.4th at p. 803.) Withers admits he "planned to kidnap Rodriguez so he could retaliate by beating or raping her." However, he argues that "no evidence showed that the plan involved shooting Rodriguez."

The evidence shows that in planning Rodriguez's kidnapping, Withers secured the participation of McCreary, a drug dealer's enforcer known for wearing a bullet proof vest. Withers ensured McCreary had a throwaway gun to use during the crime. A factfinder could reasonably conclude that given Withers's physical build and fighting experience, if he merely intended to beat or rape Rodriguez as he claimed, he most likely could have accomplished that by relying on his own strength and martial arts skills.

12

Therefore, his decision to bring along an armed companion evinced his intention that the gun be used to possibly kill Rodriguez for lying to him and causing him to defend her by stealing a gang member's vehicle. We conclude this factor supports the court's finding.

The second factor asks, "What role did the defendant have in supplying or using lethal weapons?" (*Banks, supra,* 61 Cal.4th at p. 803.) Withers concedes the evidence showed he asked McCreary to obtain a throwaway gun. But he adds, "[T]he evidence did not show that [he] knew McCreary was armed in the car. And even if it did, that would not necessarily establish that [he] was a major participant." As stated, Withers arranged for McCreary to obtain the gun to carry out the attack on Rodriguez. Therefore, it is reasonable to assume he relied on that assurance of McCreary who, after witnessing Withers's anger upon discovering Rodriguez's lies, told him, "I got it. I'll take care of it." Additionally, Withers could be confident that as McCreary was armed, he would handle any eventuality that arose during the incident, including shooting Rodriguez. This factor supports the court's finding.

The third factor asks, "What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?" (*Banks, supra,* 61 Cal.4th at p. 803.) Withers acknowledges the "evidence supported a finding that [he] planned to kidnap Rodriguez so he could punish her for lying about being raped by either beating or raping her." But he claims "the plan did not involve shooting Rodriguez in [his] car." The factfinder need not accept as truth Withers's self-serving statements that he intended only to beat or rape Rodriquez. Rather, as Withers was the mastermind behind the criminal plan, it is reasonable to assume he knew the particular danger posed by his

13

enlisting an armed enforcer to participate in the crime.  He knew McCreary, and recruited him for the assignment precisely because of his reliability as an enforcer and his expertise in using a firearm, which would help to accomplish Rodriguez's death if needed.  This factor also supports the court's finding.

The fourth factor asks whether "the defendant [was] present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death." (*Banks, supra*, 61 Cal.4th at p. 803.)  Withers concedes he was present and driving the car when McCreary shot Rodriguez.  But he argues McCreary fired the gun without warning and in rapid succession, thus he could not have intervened to stop him.  Contrary to Withers, we do not start our analysis of this factor at the moment he and McCreary put Rodriguez in the car.  Rather, we also take into account that minutes earlier Withers ordered a man to keep Rodriguez in check until Withers reached the hotel.  During the intervening time, it is reasonable to assume Withers honed his plan to make Rodriguez pay for misleading him into thinking D.R. had raped her.  At any point before reaching the hotel, Withers could have halted his plan by declining to take an armed McCreary with him, or by instructing McCreary not to use his gun.  But the evidence indicates he did no such thing. Specifically, during the controlled call, Withers appeared to take for granted the gun would be used in the kidnapping; which would explain why his objection was only to the number of shots McCreary fired in the car.  This factor therefore supports the court's finding.

As for the final factor, "What did the defendant do after lethal force was used" (*Banks, supra*, 61 Cal.4th at p. 803), Withers acknowledges he "acted callously after Rodriguez's death, by covering her body with a blanket and telling McCreary to clean up the mess."  He nonetheless argues, "Even

14

though [he drove] McCreary and Rodriguez's body to his home and went inside, no evidence showed that Rodriguez may have survived if [he] had helped her." By Withers's own admission, Rodriguez was alive, albeit barely, when he returned to the house. Accordingly, if Withers did not intend for her to be killed, he could have manifested that intent by taking her to a hospital or calling 911. He did neither, nor did he take any other action to ease Rodriguez's suffering or prevent her death. Instead, while she lay dying, he and McCreary ate and drank. He instructed McCreary to clean up the mess, which McCreary did by disposing of Rodriguez's body. This factor also supports the court's finding.

Balancing the above factors, we conclude the record contains substantial evidence supporting the court's conclusion Withers was a "major participant" in the kidnapping and homicide. No factor supports his contrary claim.

As stated, the major participant factors analyzed above and the reckless indifference factors we now turn to " 'significantly overlap.' " (*Clark, supra*, 63 Cal.4th at p. 615.) Therefore, to the extent they overlap, we need not repeat our analysis when considering these *Clark* factors.

The first *Clark* factor addresses the "defendant's awareness that a gun [or other deadly weapon] will be used," whether the defendant personally used a lethal weapon, and the number of lethal weapons used. (*Clark, supra,* 63 Cal.4th at pp. 618-619.) This factor supports the court's finding for the reasons set forth above. Specifically, the record shows Withers asked McCreary to get a throwaway gun to handle Rodriguez in light of her lying about being raped.

Regarding the second factor, the defendant's "[p]roximity to the murder and the events leading up to it" and the opportunity to either restrain the

15

crime or aid the victim (*Clark, supra*, 63 Cal.4th at pp. 619-620), this factor also supports the court's finding. As set forth above, Withers did nothing to either restrain McCreary from killing Rodriguez or to aid her once she was shot four times.

The third factor addresses whether the murder took place "at the end of a prolonged period of restraint of the victim[ ] by defendant." (*Clark, supra*, 63 Cal.4th at pp. 620-621.) The court explained: "Where a victim is held at gunpoint, kidnapped, or otherwise restrained in the presence of perpetrators for prolonged periods, 'there is a greater window of opportunity for violence' [citation], possibly culminating in murder." (*Id.* at p. 620.) This incident began with Withers's order that a man keep Rodriguez in check while Withers returned to the hotel to deal with her. He later drove the vehicle with her as his passenger along with McCreary, the enforcer. This factor supports the court's finding, as Withers ordered Rodriguez's detention, participated in her kidnapping, and was seated next to McCreary when McCreary shot her. The fact that McCreary shot Rodriquez within five minutes of the kidnapping does not alter our analysis. The forensic evidence shows McCreary shot her while she was trying to exit the car, which likely precipitated his decision to shoot her earlier rather than later.

As for the fourth factor, the "defendant's knowledge of . . . a cohort's likelihood of killing" (*Clark, supra*, 63 Cal.4th at p. 621), as set forth above, this factor supports the court's finding that Withers arranged for McCreary to get a throwaway gun. It is reasonable to infer Withers would not have done so unless he intended for the gun to be used in the kidnapping. The earplugs found in Withers's car also permitted the inference he and McCreary knew gunshots would be fired in his vehicle and therefore sought to protect their hearing while undertaking their mission to shoot Rodriguez.

16

The fifth factor addresses whether the defendant made an "effort[ ] to minimize the risks of violence in the commission of a felony." (*Clark, supra*, 63 Cal.4th at pp. 621-622.) As stated, on this record, Withers did nothing to minimize the risks of violence. This factor therefore supports the court's finding.

Balancing the factors from *Clark, supra*, 63 Cal.4th 522, and considering the totality of the circumstances, we conclude the record demonstrates that all the factors show Withers acted with reckless disregard for human life. He " 'knowingly creat[ed] a "grave risk of death," ' " that involved a "gross deviation from the standard of conduct that a law-abiding person would observe in [his] situation" (*In re Scoggins, supra*, 9 Cal.5th at p. 683); accordingly, substantial evidence supports the court's finding he acted with reckless indifference to human life.

Relying on *In re Bennett* (2018) 26 Cal.App.5th 1002, Withers argues no evidence showed he was a major participant, or that the plan involved shooting Rodriguez. He claims any knowledge he had that McCreary was armed or any indication he failed to reduce the risk of violence still does not show he acted with reckless indifference. He also argues the kidnapping lasted only a short time before McCreary independently decided to kill Rodriguez. He adds that no evidence showed the plan contemplated killing Rodriguez. We are not persuaded by Withers's reliance on that case because as a general matter, "Determining a defendant's culpability under the special circumstances statute requires a fact-intensive, individualized inquiry." Further, the *Bennett* case is distinguishable, as that court, relying on *Banks* and *Clark*, concluded the defendant " 'did not see the shooting happen, did not have reason to know it was going to happen, and could not do anything to stop the shooting or render assistance' "; moreover, no evidence showed his

17

coparticipants' propensity to shoot the victim. (*Bennett, supra,* at pp. 1023-1024.)  By contrast, as shown, Withers masterminded the plan to kidnap Rodriguez, and directed McCreary to obtain a gun and participate in the crimes.  Withers was next to McCreary in the limited confines of his car when McCreary shot Rodriguez.  Afterwards, Withers rendered no assistance to Rodriguez.  Under these circumstances, the court did not err in finding Withers was a major participant and acted in reckless disregard for human life.

DISPOSITION

The order is affirmed.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.